MINA HAKAKIAN (SBN 237666)
mhakakian@wwlawcorp.com
WILLIAMS WOLLITZ HAKAKIAN PC
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733

Attorneys for Plaintiff,
CALIFORNIA SPINE AND
NEUROSURGERY INSTITUTE d/b/a SAN
JOSE NEUROSPINE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE dba SAN JOSE NEUROSPINE, a California Corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>SITEONE LANDSCAPE SUPPLY, INC.; CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut General Corporation DBA Cigna; CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Connecticut Corporation<br><br>        Defendants | Case No.: 2:24-cv-05842<br><br><br>COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B), BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(A)(3), AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1) |

Plaintiff, California Spine and Neurosurgery Institute dba San Jose Neurospine, a California corporation, ("Plaintiff" and/or "SJN") alleges against

– 1 –

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B), BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(A)(3), AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

Defendants SiteOne Landscape Supply Inc. ("SiteOne Defendants"); Cigna Health and Life Insurance Company, and Connecticut General Life Insurance Company, ("Collectively "Cigna" and/or "Cigna Defendants") (for easy refence hereinafter, the Cigna Defendants and Siteone Defendant are collectively referred to as "Defendants") as follows:

## I.   <u>INTRODUCTION</u>

1.      Plaintiff SJN, an out-of-network surgery center which received valid assignments of benefits for surgeries performed, seeks redress on behalf of a patient plan member for two separate types of harms: (1) improper denials of medical insurance benefits and (2) violations of owed fiduciary duties by Defendants. Notably, the industry-standard method for out-of-network medical providers to quickly verify insurance benefits (coverage and benefits eligibility and issuance of payment) for a prospective patient is to simply call the number listed on a prospective patient's insurance card and speak directly with their insurance plan's claim administrator to verify coverage and determine benefit amounts when applicable.  Defendants have exploited this efficient, practical, patient-friendly system by professing to specific reimbursement rates and coverage of surgeries, only to later deny and severely underpay Plaintiff after the surgeries were performed without any regard to the pre-verifications or the Plan terms.  De minimis payments, if granted, are offered after those owed, such as Plaintiff, tackle unnecessary delays, blatantly incorrect claim processing, and improper bartering by "third-party" companies who, under the authorization of Defendants, threat further inquiry and delays unless those owed quickly accept a severely undercut payment.  Explanation for Defendants' underpayment, if offered, falls dangerously below ERISA standards, contains falsities, and further directs Plaintiff to call these "third-party" companies regardless of if Plaintiff had previous denied or ignored their predatory tactics. Defendants unlawfully retain Plan funds that are due and owing to Plaintiff for valid

medically necessary services rendered and uses those funds for alternative purposes while obstructing Plaintiff's access to those funds by simultaneously violating fiduciary rights which are to be guaranteed by the Employee Retirement Income Security Act of 1974 ("ERISA").

## II.   JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C § 1132 (e)(1) because this action seeks to enforce rights under ERISA.

3.      This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District where the breaches took place, and because the Defendants conduct a substantial amount of business in this Judicial District.

## III.   PARTIES

### a.   The Plaintiff

4.      SJN is a corporation organized under the laws of the state of California, with its principal place of business located in the Northern District of California.  Dr. Abebukola Onibokun is the founder, owner, and principal surgeon of SJN.  Dr. Abebukola Onibokun also performed the surgery event giving rise to this action.

5.      SJN provides world-class spinal expertise and treatment to its patients, particularly in the field of minimally invasive surgery.  SJN specializes in ultra-sophisticated surgical procedures involving minimally invasive and motion preserving spinal decompressive, endoscopic spinal fusion, and complex spinal reconstruction techniques, as well as robotic computer assisted image guided surgeries.  SJN and its principal, Dr. Onibokun, are in the business of changing and

– 3 –

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B), BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(A)(3), AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

saving lives.  Numerous video testimonials from Dr. Onibokun's patients exist attesting to their newfound and often immediate ability to: breath, regain feeling in limbs, stand, walk, do daily activities, play with their children, exercise, and even go back to work as a direct result of their surgery at SJN by Dr. Onibokun.[1]

6.     Dr. Onibokun is among our nation's top neurosurgeons and a master of minimally invasive spine surgery.  Before establishing and directing SJN, he served as the chief of neurosurgery at Elmhurst Memorial Hospital in Chicago where he established their minimally invasive spine surgery program.  He also served as a Health System Clinician at the Northwestern Medicine Regional Medical Group.  Dr. Onibokun has been recognized by Becker's Spine Review's "36 Spine Surgeons Under 40 to Know," a national list based on publicly solicited recommendations and editorial research which honors young surgeons who are leaders in their field.  Dr. Onibokun has co-authored sentinel articles on minimal invasive spinal surgery techniques.  The first-ever article defining the anatomic considerations for cervical pedicle screw insertion using multiplanar CT measurements was grounded on Dr. Onibokun's research.  He has won America's Top 5% Most Honored Professional Award as well as multiple "Patient Choice Awards" and "Most Compassionate Doctor Awards".

7.     Dr. Onibokun has achieved high honors in top national neurosurgery training programs.  He is certified by the American Board of Neurological Surgery, completed a residency in Neurosurgery at UCLA Medical Center, which is consistently ranked as one of the top neurosurgery programs in the United States and fellowship training in neurological surgery.  He completed Northwestern University

---

1     Patient Success Stories, Patient Success Stories - San Jose Neurospine in San Mateo and Santa Clara counties - Cupertino, South San Francisco, Silicon Valley, Atherton, Campbell, https://sanjoseneurospine.com/about/patient-testimonials.html (last visited Feb 2, 2024).

Medical School with Alpha Omega honors after graduating from Iowa State University *Magna Cum Laude*.  He is an active member of the American Association of Neurological Surgeons, Congress of Neurological Surgeons, and the North American Spine Society.

8.     Despite conducting well over 2,000 advanced and successful surgical operations, Dr. Onibokun resolutely practices and advocates for careful consideration before engaging in surgery for patients.   SJN's website states, "Philosophically, Dr. Onibokun emphasizes conservative treatment options prior to considering spine surgery."  The SJN brochure reiterates, "Dr. Onibokun strongly believes in exploring non-surgical treatments first, prior to considering surgical interventions." The SJN brochure goes on, "If non-surgical options fail to relieve symptoms, SJN emphasizes minimally invasive spine surgery." [2] Dr. Onibokun's philosophy is also exemplified on the SJN website in its unique offering of a publicly available content-rich online spine encyclopedia featuring free self-help materials for back and neck symptoms, including a symptom chart, medical animations, exercise library, proper lifting, pain prevention, pain relief and home remedies guides.  SJN even also offers a free home remedy book for people suffering from neck and back pain to achieve the best healthcare through educating healthcare consumers."[3]

---

[2]     San Jose Neurospine Pamphlet, https://sanjoseneurospine.com/images/spine-surgeon-minimally-invasive-spine-surgery-san-jose-redwood-city-dr-onibokun.pdf (last visited Feb 2, 2024).

[3]     Home remedy book, Home remedies for back pain and neck pain - San Jose, Santa Clara, San Mateo, Redwood City, Menlo Park, Palo Alto, Mountain View - San Jose Neurospine, https://sanjoseneurospine.com/forms/a_hrb.html (last visited Feb 2, 2024).

### i. __Patient Plan Member__

9. Plaintiff is informed and believes that Dr. Onibokun provided surgical services to one patient that was active member of the Site One Landscape Supply Inc. during the perspective date of service.

10. For privacy, the patient for whom Dr. Onibokun provided surgical services is designed by initials as Patient JOS-BAN ("Patient JOS-BAN" and/or "Patient")[4].

11. Patient JOS-BAN in this case properly conveyed and transferred all pertinent rights to Plaintiff SJN, through valid written assignment, including but not limited to his/her healthcare benefit coverage rights, rights to insurance, rights to healthcare plan reimbursement, rights to appeal, and rights to sue. The assignment of benefits paperwork for Patient JOS-BAN t is attached as Exhibit 1 to the Complaint.

### b. __The Defendants__

12. Plaintiff is informed and believes that Defendant Cigna Health and Life Insurance Company is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut, licensed and doing business in the state of California.

13. Plaintiff is informed and believes that Defendant Connecticut General Life Insurance Company is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut, licensed and doing business in the state of California.

---

[4] The name and any identifying information about Patient JOS-BAN is not set forth in this Complaint in order to preserve and protect the patient privacy. Plaintiff will make the identifying information available to Defendants pursuant to an appropriate protective order, and will request that the patient information also be subject to appropriate protection during the course of litigation proceeding in this Court.

14.     Plaintiff is informed and believes that Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company are related corporate entities that work together under the Cigna name in the business of administering, underwriting and processing health insurance plans and ERISA Employee Benefit Plans.

15.     Plaintiff is informed and believes that the Defendant SiteOne Landscaping Supply Inc. is the nations largest supplier of wholesale goods for green industry professionals in the United States and Canda.[5] Plaintiff is informed and believes that SiteOne offers health insurance coverage to its employees ("Plan" and or "SiteOne Plan"). Plaintiff is informed and believes that Patient JOS-BAN was insured under the SiteOne Landscaping Supply Inc. Plan for the year 2023.

16.     Plaintiff is informed and believes the Plan offers medical coverage for doctors, hospitalization, outpatient surgery facility fees and the like for both in-network and out-of-network providers.  Plaintiff is informed and believes that under the Plan providers Out-of-Network Reimbursement determination is at 50% of Usual and Customary rates also known as UCR.

17.     Plaintiff is informed and believes that the Plan is a Self-funded Employee Benefit program covered by ERISA. Plaintiff is informed and believes that Cigna Defendants act as the administrator for the Plan and SitOne Defendant is the Plan sponsor.  Plaintiff is informed and believes that the Cigna Defendants and SiteOne Defendant, acting in concert with one another, have the joint and exclusive discretion to interpret benefits under the Plan; to interpret other terms, provisions limitations and exclusions of the Plan; to make factual determination related to the Plan and its benefits; and to pay claims of medical services providers and facility providers for services rendered to the Sitone Plan members and/or beneficiaries and

---

[5]     SiteOne, about us, https://www.siteone.com/en/aboutus (last visited 5/2/2024)

dependents. A summary of Plaintiff's billed charge, Defendants' payment for Patient JOS-BAN is attached as Exhibit 2 to this Complaint.

18. Plaintiff is informed and believes that under the SiteOne Plan, all claims for providers in California must be submitted directly to Cigna electronically or by mail addressed to Cigna PPO at 62308 P.O. Box 18223 Chattanooga, Tennessee 37422-7223 and the claim is considered to have been filed upon receipt of the claim, which is thereafter processed by the Plan.

19. Plaintiff is informed and believes that the Defendants together are the Plan fiduciaries and operated as fiduciaries to the Plan participants. Defendants had a duty to act prudently and in the interest of the Plan participants and beneficiaries. In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan.

20. With respect to the claim at issue in this case, SJN in advance of the surgery event communicated directly with Cigna by telephone to verify SJN's eligibility to receive benefits under the Plan as an out-of-network provider. During the verification call, SJN was advised that it was eligible to receive benefits. After performing services SJN submitted its claim for payment to Cigna Defendants. The billing claim form submitted for payment to Cigna Defendants by SJN was standardized form document of the sort that SJN submits to all insurance company payers. The billing claim form identified pertinent information, such as the provider name, address, patient name, patient address, Id number, the date of service, and the nature of services rendered. The billing form utilized standardized medical "Current Procedural Terminology ("CPT" codes) to identify the medical services performed. CPT code is a medical code set that is used to report medical, surgical, and diagnostic procedures and services to entities such as physicians, health insurance companies, and accreditation organizations.

21.    The charges for healthcare services submitted by SJN to Cigna Defendants was in all instances, usual, customary and reasonable and in accord with SJN's charges to non-Medicare patients insured by entities other than the subject Plan in this case.  SJN's charges for services submitted to Cigna Defendants was also in accordance with the charges for other medical services providers in the community who provided healthcare services that might be considered comparable to those provided by SJN.  The Defendants have abused their discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay SJN's claim in accordance with the Plan requirements, practices and provisions and SJN has suffered resulting damages in an amount to be proven at trial.

## IV.   CORE FACTS UNDERLYING SJN'S CLAIMS FOR PAYMENT

22.    Before SJN provided surgical services to Patient JOS-BAN, SJN verified his insurance coverage.  Patient JOS-BAN presented his insurance card to SJN.  A copy of Patient JOS-BAN insurance card is attached as Exhibit 3.  The insurance card indicated that Patient JOS-BAN was a member of the SiteOne Plan. Per customary administrative procedure, SJN called Defendants' designated phone number on the insurance card to verify the insurance coverage and reimbursement rates.  SJN documented the content of this industry-standard verification phone call on "Patient Intake Forms,".

23.    On April 14, 2023 at 12:40 PM, SJN called Cigna Healthcare customer service line for Siteone at 1-866-955-7483 to verify eligibility and coverage for Patient JOS-BAN and was connected to a Cigna representative identified as Kay S. SJN's office representative transcribed the insurance coverage and benefit amounts information that the Cigna representative provide on a Patient Intake Form. Copy attached hereto as Exhibit 4. Cigna' representative confirmed that patient JOS-BAN had the self-funded SiteOne Plan and that the policy was effective as of February 01,

– 9 –

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B), BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(A)(3), AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

2023.  Cigna's representative stated that there was no pre-existing clause and the Provider Out-of-Network Reimbursement Determination for Provider Co-insurance would be at 50% of Usual and Customary and would not be based on Medicare fee schedule.

24.     Thereafter on May 8, 2023, SJN provided surgical services to Patient JOS-BAN based on the reasonable expectation that Defendants would honor Defendants' own coverage and reimbursement rates, which were professed in an official capacity by Defendants' representatives on industry-standard insurance verification phone call. SJN would not have provided surgery services but for the advanced coverage representations that Defendants asserted.

### a. Patient JOS-BAN Properly Conveyed Valid Assignments of Benefits, Transferring All Pertinent Rights to SJN

25.     Patient JOS-BAN properly conveyed a valid Assignment of Benefits which transferred all rights pertinent to reimbursement, and recovery, as well as owed fiduciary duties by the serving insurer and plan administrator, regarding the services SNJ provided.  (Ex. 1.)   The assignment of benefits conveyed and transferred to SJN all of Patient JOS-BAN's healthcare benefit coverage rights, rights to insurance and rights to healthcare plan reimbursement.  The assignment encompassed all rights to appeal or sue, and designated SJN as the Patient's authorized representative.

### b. SJN Provided a Surgery Cost Estimate and an Out-of-Network Consent Form

26.     On May 2, 2023, SJN properly informed Patient JOS-BAN that SJN was an out-of-network provider and did not participate with Patient JOS-BAN's insurance.  Patient JOS-BAN was informed of his surgery costs and out-of-pocket costs as well as his deductible and co-insurance responsibility.  Patient JOS-BAN consented to receiving medical services from SJN as an out-of-network provider.

Copy of the Surgery Cost Estimate and out-of-network Consent Form is attached to this Complaint as Exhibit 5.

### c. SJN Performed Medically Necessary Surgical Services

27.     Patient JOS-BAN demonstrated medical need for neurosurgical intervention before Dr. Onibokun commenced surgery.

28.     Patient JOS-BAN presented at SJN's office with progressively worsening lower back pain and left lower extremity pain.  The Patient underwent a lumbar MRI scan which revealed that the patient had Severe L4-5 central canal and bilateral L4-5 lumbar lateral recess stenosis and Left L5-S1 foraminal stenosis.  As a result of the sever nature of the pain the patient was enduring, neurosurgical intervention was warranted.  Thereafter, on May 8, 2023, the Patient underwent a Bilateral L4 laminotomies and medial facetectomies; left L5-S1 foraminotomy with the use of operating microscope microdissection techniques.  A copy of the Operative Report is attached hereto as Exhibit 6.

### d. SJN Submitted Sufficient Claim Form for the services performed to Cigna Defendants, which in turn severely underpaid the claim in violation of ERISA

29.     On May 10, 2023, SJN submitted an industry Form 1500 Health Insurance Claim Form, approved by the National Uniform Claim Committee (NUCC), to Cigna.[6]  A copy of the Claim form is attached as Exhibit 7.  The relevant information for Patient JOS-BAN, SJN, and surgery was filled in.  Box 12 and 13 were properly signed, indicating that there was authorization for processing the claim and paying medical benefits, and Box 27 was properly checked 'yes', which

---

[6]     The Claim was sent to Cigna at 62308, P.O. Box 182223, Chattanooga, TN, 37422-7223, which is the address that Patient JOS-BAN's Cigna ID lists to forward claims to.

notified the Plan and the claims administrator that the claim was to be processed by way of assignment from the beginning of the claim submittal process.   The CPT codes were listed on the claim form as follows:

| Date of Service | Place of Service | CPT/HCPCS | Modifier | CHARGE |
|-----------------|------------------|-----------|----------|--------|
| 05/08/2023 | 22 | 63030[7] | 50 | $73,000.00 |
| 05/08/2023 | 22 | 63035[8] | | $18,000.00 |
| 05/08/2023 | 22 | 69990[9] | | $2500.00 |

The total charge for the procedures was accordingly listed on the claim form as $93,500.00 in total.   The claim form was accepted for processing by Cigna.   The Form 1500 billing included all information necessary to enable Cigna Defendants and Siteone Defendant to pay the claim submitted by SJN in ordinary course.

## V. DEFEDNANTS VIOLATED ERISA STANDARDS BY ISSUING SEEVERLY DEFICIENT EOB CONTAINING FALSE IFNORMATION

30.     On May 23, 2023, Cigna provided an Explanation of Benefits (EOB) to Patient JOS-BAN directly.   Copy of the EOB is attached here as Exhibit 8. Defendants paid only $2,250.04 out of the $93,500.00 billed charges by SJN.   The EOB contained the following pertinent claim payment information within its chart,

---

7     The procedure performed under CPT code 63030 is Bilateral L4 laminotomies and medical facetectomies.

8     The procedure performed under CPT Code 63035 is Left L5-S1 foraminotomy.

9     CPT Code 69990 is for use of the operating microscope microdissection technique.

which is accurately replicated below[10]:

| Service Date | Type of Service | Amount Billed | Discount | Amount not Covered | Allowed Amount | What your Plan paid | % paid | See Notes |
|---|---|---|---|---|---|---|---|---|
| 05/08/2023 | SURGERY | 73,000.00 | 71,021.23 | 0.00 | 1,978.77 | 1,978.77 | 100 | AO |
| 05/08/2023 | SURGERY | 18,000.00 | 17,728.73 | 0.00 | 271.27 | 271.27 | 100 | AO |
| 05/8/2023 | SURGERY | 2,500.00 | 0.00 | 2,500.00 | 0.00 | 0.00 | 0 | A1 |
| Total | | $93,500.00 | $88,749.96 | $2,2500.00 | $2,250.04 | $2,251.04 | | |

The "Notes" AO and A1 are explained as follows:

- A0: Federal law prohibits balance billing; providers should contact Zelis at hsa@zelis.com or at 888-346-8488 with questions.

- A1: Health care professional only.  Cigna doesn't allow this service.  It's part of a CMS NCC1 column 1/column 2 edit.

Defendants sparce explanation for the underpayment is merely that Federal law prohibits balance billing and providers should contact Zelis. Defendants did not explain how the "Allowed Amount" was calculated and how the discount of $88,749.96 was calculated and on what basis.  There is nothing in the EOB that indicates how the Defendants calculated the Allowed Amount.  There is nothing in the EOB that explains how and why and in what matter federal law prohibits balance billing for what federal law it is referring to.  It is crucial for consumers to be able to hold Plans accountable for their allowed amount determinations as the determinations directly affect how much a consumer must reimburse a provider out-of-pocket. The explanation that Cigna does not allow this service does not provide a valid basis for the denial as whether Cigna allows a code is irrelevant if the Plan actually provides coverage for the charge and the inclusion of part of a CMS NCCI

10   EOB columns regarding Copay, Deductible, and Co-insurance were removed from the chart as the value contained was zero for each.

– 13 –

column/column 2 edit is meaningless squitter.

31.   On May 23, 2023, Cigna also provided an Explanation of Deposit Activity Report to SJN directly for the services rendered.  Copy of the Report is attached here as Exhibit 9.  The Report contained the following pertinent claim payment information within its chart, which is accurately replicated below[11]:

| Procedure Date | Procedure Code | Billed Amount | Allowed Amount | Not Covered/ Discount | Deduct/ Copay Amount | Coinsurance Amount | Plan Benefit | Notes |
|---|---|---|---|---|---|---|---|---|
| 05/08/2023 | 63030 | 73000.00 | 1978.00 | $71,021.23 | | | 1978.77 | AO |
| 05/08/2023 | 63035 | 18000.00 | 271.27 | $17,728.73 | | | 271.27 | AO |
| 05/8/2023 | 69990 | 2500.00 | | $2,500.00 | | | 0.00 | A1 |
| Total | | 93,500.00 | $2,250.04 | 91249.96 | $0.00 | | | |

The "Notes" AO and A1 are explained as follows:

- A0: Federal law prohibits balance billing; providers should contact Zelis at hsa@zelis.com or at 888-346-8488 with questions.
- A1: Health care professional only.  Cigna doesn't allow this service.  It's part of a CMS NCC1 column 1/column 2 edit.

Defendants sparce explanation for the underpayment is merely that Federal law prohibits balance billing and providers should contact Zelis. Defendants did not explain how the "Allowed Amount" was calculated and how the Not Covered/Discount of $91,249.96 was calculated and on what basis.  There is nothing in the Explanation of Deposit Activity Report that indicates how the Defendants calculated the Allowed Amount.  It is crucial for consumers to be able to hold Plans

---

11   Explanation of Deposit Activity Report columns regarding Adjusted Procedure Code, DRG/Per Diem/ACT Type; DRG/Per Diem/ APC Number; DRG/Per Diem/ Amount; DRG/Per Diem/ Benefit Amount were removed from the chart as the value contained was either zero for each or no value was assigned.

accountable for their allowed amount determinations as the determinations directly affect how much a consumer must reimburse a provider out-of-pocket. The explanation that Cigna does not allow this service does not provide a valid basis for the denial as whether Cigna allows a code is irrelevant if the Plan actually provides coverage for the charge and the inclusion of part of a CMS NCCI column/column 2 edit is meaningless squitter.

32.     Plaintiff is informed and believes that the payment for Patient JOS-BAN's claim was in some manner set or altered by Zelis Healthcare LLC ("Zelis"), a "third-party pricing company". Plaintiff is informed and believes that despite Defendants' attestation of specific out-of-network reimbursement pricing percentage, Defendants sent Patient JOS-BAN's claim to Zelis, for processing which in turn processed the claim without any regard to the Plan terms. Plaintiff is informed and believes that Patient's claim was processed without any regard to the Plan terms.

33.     Plaintiff is informed and believes that Zelis is paid commissions from Defendants based on the percentage that Zelis can slash the reimbursement rate of provider's billed charges disguised as "Negotiations". Plaintiff is informed and believes that Defendants conspired with Zelis and provide Explanations of Benefits to the Patients which purports to convey negotiated discounts by Cigna through Zelis which are misrepresentation of what has transpired.   When Defendants issue the de minimis payment, Defendants instructed on their impermissibly vague and subpar EOB that the owed recipients "Call Zelis at 888.346.8488," without giving reason for this instruction or explanation to the owed recipients that Zelis is a "third-party" repricing company tasked with "negotiating" the lowest reimbursement rate possible for Defendants.  Plaintiff is informed and believes that Defendants masqueraded their reductions efforts through use of "third-party negotiators" such as Zelis, which essentially operate as extensions of Defendants and do not do any actual negotiations.

34.    Plaintiff is informed and believes that Defendants intended Plan members to be lulled by a false sense of financial security produced by Defendants and not pay the rest of their provider's billed charge nor hold the Defendants liable.

35.    Plaintiff is informed and believes that in their claim determination Defendants have improperly adjusted the payment, post adjudication, by misrepresenting to the Patient that SJN was a member of the Plan/Cigna's PPO network and and/or SJN negotiated a discount settlement and that the Patient owed zero.  The EOB from May 23, 2024 on its Face page coveys the following:

| Amount Billed | $93,500.00 | This was the amount that was billed for your visit on 05/08/2023. |
|---|---|---|
| Discount | $88,749.96 | **You saved $88,749.96.** CIGNA negotiates discounts with health care professionals and facilities to help you save money. |
| Amount not covered | $2,500.00 | This is the portion of your bill that's not covered by your plan. You may or may not need to pay this amount. See the Notes section on the following pages for more information. The total amount of what is not allowed and/ or not covered is $2,500.00 of which you owe $0.00 . |
| What your plan paid | $2,250.04 | Your plan paid $2,250.04 to ADEBUKOLA A ONIBOKUN MD. |
| What I owe | **$0.00** | This is the amount you owe after your discount, your plan paid, and what your accounts paid. People usually owe because they may have a deductible, have to pay a percentage of the covered amount, or for care not covered by their plan. Any amount you paid since care was received may reduce the amount you owe. |
| You saved | **97.33%** | You saved $91,000.00 (or 97.33%) off the total amount billed. This is a total of your discount and what your plan paid. To maximize your savings, visit www.myCIGNA.com or call customer service to estimate treatment costs, or to compare cost and quality of in-network health care professionals and facilities. |

The EOB provided contains the definition of the term "Discount" that Cigna applied to the claim as follows:

**Discount:** The amount you save by using a network health care provider. Cigna negotiates lower rates with network health care providers to help you save money. Using out-of-network providers will cost you more. If you go out-of-network for services, Cigna may be able to get you discounts through third-party vendor contracts.

The EOB improperly indicates a "Discount of $88,749.96" in spite of the fact that SJN was not was a contacted provider and did not agree or engage in any

negotiations with the Plan, Cigna or Zelis in this case as it is conveyed in the EOB[12]. The term "Discount" as defined under the EOB is the amount the patient saves by using a network healthcare provider. SJN is not a network provider and to claim this "discount" is false and misleading. In the EOB, Defendants also state that the Patient owes zero. Under the Section "what I owe" under the EOB, Cigna states "this is the amount you owe after your discount, your plan paid and what your accounts paid." This section is false and misleading in nature as well, as during the verification call the Cigna Defendants represented the out-of-network reimbursement was 50%-50% co-insurance. In fact, the same is stated in the Cigna ID provided at the initial time of visit. Plaintiff is informed and believes that Defendants include such false and misleading information to create a false sense of financial security in the Patients so that the Patient would not pay the rest of their provider's billed charge nor hold the Defendants liable.

36.     Plaintiff is informed and believes that in their claim determination Defendants have improperly adjusted the payment, post adjudication, by misrepresenting to SJN that $91,249.96 out of their total billed amount of $93,500.00 was not covered or discounted. In the Explanation of Direct Deposit Activity Report (Exhibit 9) Cigna claimed that $91,249.96 was not covered/discount as depicted.

---

[12]     Plaintiff's representative contacted Zelis on a recorded call on August 24, 2023 and was connected to represented Yolanda. The Zelis representative confirmed that the payment was processed based on in-network rates. Plaintiff's representative also contacted Cigna with respect to the underpayment on August 24, 2023 and was connected to representative Rana on a recorded call. The Cigna representative confirmed that the claim was priced by Zelis and that there were no negotiations on file. During the calls, Plaintiff's representative was provided with a Call Reference number and claim number which are included in this complaint to preserve patient privacy. The reference numbers will be provided once a protective order is on file to preserve patient's privacy and in compliance with HIPPA protections.

The Report contained the following pertinent claim payment information within its chart, which is accurately replicated below[13]:

| Procedure Date | Procedure Code | Billed Amount | Allowed Amount | Not Covered/ Discount | Deduct/ Copay Amount | Coinsurance Amount | Plan Benefit | Notes |
|---|---|---|---|---|---|---|---|---|
| 05/08/2023 | 63030 | 73000.00 | 1978.00 | $71,021.23 | | | 1978.77 | AO |
| 05/08/2023 | 63035 | 18000.00 | 271.27 | $17,728.73 | | | 271.27 | AO |
| 05/8/2023 | 69990 | 2500.00 | | $2,500.00 | | | 0.00 | A1 |
| Total | | 93,500.00 | $2,250.04 | 91249.96 | $0.00 | | | |

The definition for the Not Covered/Discount is as follows:

**Not Covered *I* Discount:** Part of "Billed Amount" Not Covered under benefit plan or a Provider Discount.

This statement on the Explanation of Direct Deposit Activity Report could not be more misleading and false.  There has been no discount provided by the Provider in this case SJN.  SJN has not agreed to any discounts or negotiation for this this claim.  As the Explanation of the Benefits (Exhibit 8) evidenced the discount was defined under the EOB as the amount the patient saves by using a network healthcare provider and SJN is not a network Provider.  In this case the discount/not covered amount applied has been wrongly applied and there is no basis for such reduction of SJN's bill.

37.    Plaintiff is informed and believes that "Negotiation" is a false term purported by Defendants to mask Zelis true purpose which is to reduce payments to providers without regard to the Plan terms or any actual reasoning.  In fact, in this case, no actual "Negotiation" took place with SJN prior to the submittal of the EOB by the Defendants.  The EOB falsely informed the Patient that Cigna negotiated a

---

13    EOB columns regarding Copay, Deductible, and Co-insurance were removed from the EOB as the value contained was zero for each.

discount where non actually occurred.

38.    Plaintiff is informed and believes that this repricing scheme (actions committed by Defendants and Zelis as stated in this Complaint), violate the terms of the Plan.  During the verification call the out-of-network provider reimbursement were verified at 50% of Usual and Customary and not based on a Medicare Fee Schedule.  Additionally, the Patient's Id on its evidences out-of-network rates at 50%-50%.  Plaintiff's charges in this case were usual and customary. Usual, Customary, and reasonable are the amounts paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service[14].

39.    Plaintiff is informed and believes that the Repricing Scheme demonstrates that Defendants had no intention of honoring the out-of-network reimbursement rates that Defendants telephonically asserted to SJN to induce SJN to perform the medical services.  When Defendants issued de minimis payment, Defendants instructed that "Federal law prohibits balance billing. Providers should contact Zelis at NSA@ZELIS.COM or 888.346.8488 with questions" without giving reason for this instruction or explanation to the owed recipients that Zelis is a "third-party" repricing company tasked with negotiating the lowest reimbursement rate possible for Defendants.  When Plaintiff inquired into the payment methodology, Zelis informed the Plaintiff that it had processed the claim according to in-network rate and Cigna hides behind the assertion that the payment was processed according to Federal Qualified Payment Amount. Cigna further confirmed that no negotiation was on file.  Plaintiff is informed and believes that the repricing methods demonstrate that Defendants utilized Zelis to price Plaintiff's claim without regard

---

14    https://www.healthcare.gov/glossary/ucr-usual-customary-and-reasonable (last visited 5/6/2024)

to any sort of specified methodology or any relation to the Plan or the verification call. There is nothing in the EOB that states how and in what matter the payment was calculated.

## VI.    SJN HAS EXHAUSTED ADMINISTRATIVE REMEDIES

40.    The EOB provided for Patient JOS-BAN, failed to explain the payment reductions applied with respect to SJN's billing submittal. Defendants statement on the EOB which states "Federal law prohibits balance billing. Providers should contact Zelis at NSA@Zelis.com or 888.346.8488 with questions" is a meaningless non sequitur and provides no explanation or basis for reduction at all. Such a vague and non-specific statement in an EOB does not constitute a final determination with respect to the payment of SJN's bills. Defendants' EOB was woefully deficient in its explanation of the purported grounding for the reduction of SJN's bills and contained numerous falsities.

41.    Although Defendants' EOB was deficient and not in compliance with ERISA regulation, SJN appealed the claim determination by Defendants. In the appeal letter, SJN notified Defendants that SJN initiated the appeals process and notified Defendants of multiple falsities contained in their EOB, suspected ERISA and HIPPA violations, and Plan violations committed by Defendants. This letter was then promptly sent to Defendants. The appeals process did not result in any further payment. SJN's appeal letter is attached as Exhibit 10 to the Complaint.

42.    In its appeal, SJN notified the Defendants of their improper, ERISA violating practices such as improper settlement practices and not following regulatory framework. SJN asked for timely payment, a full review of its claim and for all Plan documents used for payment calculation. The appeal letter advised the Defendants that SJN did not negotiate any settlement regarding the reduction of SJN's fee with the Defendants or their vendors and SJN was not contracted with the Defendants or their vendors. The Appeal letter notified Defendants of SJN's

concerns regarding multiple fiduciary and various other regulatory violations committed by the Defendants and asked for copy of the Plan and a potential fraud to be investigated.

43.     In its appeal letter SJN specifically informed the Defendants that SJN was not contracted with the Plan, Cigna, or any of their agents; SJN did not negotiate any discounted settlement, with the Plan, Cigna, or any of their agents; charges were consistent with nationally recognized charges and did not accept the Plan's fabricated "Discount" fee schedule.

44.     In addition to notifying the Defendants of the violations asserted in its appeal letter, SJN specifically requested a compliant full and fair review, as required under ERISA, on all submitted documentations, disclosure of all requested reviewer identified, information and plan documents, copies of 5500 forms, consistent with state and federal laws.  In its appeal letter SJN specifically requested the following documents:

1.     All contracts or agreements with SJN, showing SJN accepted a negotiated discount on the claim.
2.     All Plan documentations that demonstrate Cigna has negotiated a binding discount agreement with SJN.
3.     All Trading Partners Agreements.
4.     The identity of the "Originating Payer" [The Plan].
5.     All origination agreements with Depository Financial Institutions ("DFI").
6.     The "reassociation" and trace information from the Plan.
7.     All Business Associate Agreement with all Trading Partners.
8.     TPAS "Fee Schedule" for SJN.
9.     Repricing agency fee schedule and methodology, in order to determine if a conflict of interest exists.
10.    All Master Plan documents, SPDs, Policies, Procedures and Work Instructions required to establish and maintain reasonable claims procedures, as required under ERISA, including but not limited to:
     i.     Documents specifically identifying the adjustment reason utilized in the EOB

  ii.  Cigna definition and or explanation of all standardized CARC utilized in its ERA

  iii.  Documents specifically identifying a "Legislative Fee Schedule"

11.  All ASO Agreements, including but not limited to:

  i.  Standard schedule of fees for administrative services provided

  ii.  Recovery or recoupment fees

  iii.  All "cost containment", "savings" or "network access" fees

In addition to the documents requested, SJN also requested that in case the Plan was a self-funded Plan, SJN be provided with the Plan name, Point of Contact, mailing address and the email address.

45.  In response to the specific and detailed appeal by SJN, Cigna provided a one-page response in which it upheld its original payment and denial and stated that the payment was based on Federal Qualified Payment[15] Amount determination by Zelis and directed Plaintiff again to contact a third-party pricing company which has had no prior communication with Plaintiff with respect to this claim. Copy of Appeal Response by Cigna attached as Exhibit 11.

46.  Plaintiff is informed and believes and therefore alleges that to the extent that the Federal Qualified Payment Amount determination is based on the No Surprise Act, the Act does not pertain to Plaintiffs such as SJN who choose to provide out-of-network services to their own patients (who knowingly choose an out of network provider) and conduct such services in an in-network setting or facility.

---

[15] Interestingly enough, Cigna deviates from its EOB which states that negotiation was done to determine the amount and states that the payment was determined by Zelis based on the Federal Qualified Payment Amount.

47.    Plaintiff is informed and believes that Defendants failed to address SJN's appeal in accordance with ERISA regulations and failed to respond to any of the requests by SJN for documents.  Defendants failed to properly investigate SJN's claim for fiduciary violations and potential fraud.  Defendants failed to timely provide additional payments to SJN.  Defendants failed to comply with the Health Insurance Probability and Accountability Act (HIPPA) by making false statements regarding discounts, concealing material facts, and not investigating allegations made by SJN.  SJN notified Defendants of multiple violations in detailed appeal letter, and Defendants merely direct SJN to contact Zelis again. Defendants appeal process was futile and did not result in any additional payment, therefore SJN has exhausted administrative remedies.

48.    Plaintiff is informed and believes that under ERISA all health plans have obligations to establish and maintain reasonable claims procedure.  Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determination, and appeal of adverse benefit determinations.  29 C.F.R. section 2560.503-1.

49.    Defendants in their responses in the EOB as well as the lack of proper appeal responses have violated the applicable claims procedure regulations governing ERISA Plan as set forth in 29 C.F.R. section 2560.503-1 (b).  Of particular significance in this case are the ERISA regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. section 2560.503-1 (g)(1).  This section requires that the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination.  The regulations require the following:

"The notification shall set forth, in a manner calculated to be understood by the claimant - -

i.    The specific reason or reasons for the adverse determination;

ii.     Reference to the specific plan provisions on which the determination is based;

iii.     A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

iv.     A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

50.     These notification requirements were not met by the EOB and the appeal response in the present action, and the regulations set forth the consequences of a failure by Defendants to comply with the adverse benefit notification requirements in its EOBs and the appeal denial. 29 C.F.R. section 2560.503-1(1) provides:

"(l) Failure to establish and follow reasonable claims procedures:
      In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

51.     SJN is deemed by law to have exhausted administrative remedies because Defendants failed to establish and follow reasonable claims procedures as mandated by ERISA. Defendants failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. section 2560.503-1. Among other things, Defendants:

- Failed to set out the specific reason for nonpayment/underpayment of Plaintiff's claims in its responses transmitted to Plaintiff during the administrative review process;

- Failed to reference the specific Plan provisions upon which its

nonpayment/underpayment determinations were based;

- Failed to give a description of additional materials or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

- Failed to provide Plan documents, or internal rules, guidance, protocols, or other criteria upon which the nonpayment/underpayment determination was based;

- Failed to state the nonpayment/underpayment determinations in a manner calculated to be understood by Plaintiff;

- Failed to provide a reasonable opportunity for full and fair review of the nonpayment/underpayment determinations;

- Employed policies designed to unduly hamper the review and appeal of claims submitted by Plaintiff;

- Acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor.

## VII.  ASSIGNMENTS TO HEALTH CARE PROVIDERS ARE FAVORED UNDER ERISA LAW

52.    In *Misic v. Bldg. Services Employees Health & Welfare Trust,* 789 F.2d 1377 (9th Cir. 1989) the Ninth Circuit Court determined that assignments of patient benefits under healthcare plans are a favored practice to ensure efficiency in the delivery of healthcare services.  "[P]ermitting the assignment of benefits claims to healthcare providers makes it easier for plan participants to finance healthcare and therefore advances the congressional intent behind ERISA." *Misic, supra,* at 1378. Assignees of a claim for collection of healthcare benefits have been permitted to bring suit on the basis of derivative standing. *See also, Simon v. Blue Behav. Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000) (extending derivative standing to healthcare providers to whom beneficiaries assigned their benefits claims for medical care from

such providers).   Granting standing to healthcare providers furthered the congressional purposes behind ERISA because it enhanced the efficiency and ease of billing among all the interested parties. *See id.* The authority of *Misic* and *Simon* was recently reaffirmed in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.,* (9th Cir. No. 20-56122, January 14, 2022).

## VIII. DEFENDANTS HAVE WAIVED AND/OR ARE ESTOPPED FROM ASSERTING ANY "ANTI-ASSIGNMENT" CLAUSES CONTAINED IN THE PLAN

53.   Under federal ERISA law, a healthcare plan and its claim administrators are subject to specific rules where benefits are to be denied with respect to claims of a healthcare provider.

54.   When making a claim determination under ERISA, "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014) ("*Spinedex*"); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) ("*Harlick*").   "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]" See *id.*

55.   Anti-assignment clauses in ERISA health plans are valid and enforceable." *Spinedex*, *supra,* 770 F.3d at 1296.  However, a plan administrator can waive the right to enforce an anti-assignment provision. *See Spinedex supra.* at 1296–97 (acknowledging the right to assert waiver, but concluding on the specific facts of *Spinedex* that the defendant-claims administrator was not required to raise the anti-assignment provision during the administrative claim  process in that case because "there [wa]s no evidence that [the claims administrator] was aware, or should have been aware, during the administrative process that [the plaintiff-medical

provider] was acting as its patient's assignee").

55.     SJN has pleaded waiver facts in this action in accordance with *Spinedex* and *Harlick*.   Each SJN billing form included an "X" in the Form 1500 which notified the claims administrator that the claim was being pursued by way of an assignment.   Moreover, Defendants paid a part of the claim submitted by SJN.   The facts establish that Defendants waived any anti-assignment, if any, within the Plan.

56.     Further, Defendants are estopped from asserting anti-assignment by the fact that during the claim administration review process it represented that SJN was eligible to receive plan benefits and the fact that portions of the claim was paid.   The authority of *Spinedex* and *Harlick* on the waiver and estoppel issues was reaffirmed in *Beverly Oaks Physicians Surgery Center, LLC v. Blue Cross and Blue Shield of Illinois,* 983 F. 3d 435 (9th Cir. 2020) ("*Beverly Oaks*").   Under *Beverly Oaks*, the promise that SJN was eligible to receive plan benefits as an out-of-network healthcare provider is sufficient to estop Defendants from asserting a plan anti-assignment clause in this case.

## IX.    SJN HAS STANDING TO PURSUE CLAIMS AGAINST DEFENDANTS UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

57.     Defendants in this action are the proper party Defendants for an ERISA benefits recovery action.   *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F.3d 1202 (9th Cir. 2011).

58.     ERISA governs all aspects of health and medical benefits under ERISA plans and authorizes a civil action to recover unpaid benefits and attorney's fees. SJN has standing to bring this lawsuit arising from its Assignments from the Patient.

///

///

**X.** **BOTH §§502(A)(1)(B) AND (A)(3) CAUSES OF ACTION MAY BE SIMULTANEOUSLY PLED, PURSUED, AND BE REMEDIED BY A PLAINTIFF WITH A VALID ASSIGNMENT OF BENEFITS**

    a. **Out-of-Network Medical Providers, such as Plaintiff, are Allowed to Pursue Claims and Receive Benefits Through Valid Assignment Under §§502(a)(1)(B) and (a)(3)**

59.    In 2024, the Ninth Circuit Court of Appeals reminded the public of its clear consensus that healthcare providers have the ability to pursue ERISA actions via valid assignment, by reversing and remanding the district court's incorrect dismissal of an ERISA action brought by an out-of-network surgery center, "First, does a healthcare provider have derivative authority to enforce ERISA's protections if it has received a valid assignment of rights?... Longstanding precedent answers "yes" to the first question." *South Coast Specialty Surgery Center Inc. v. Blue Cross of California*, No. 22-55717, 4* (9th Cir. 2024) (for publication). Ninth Circuit Court of Appeals reasoned that recognizing such derivative authority to sue, "[s]erves ERISA's purpose by 'making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan.'" *Id.* at 16-17* (quoting *Misic v. Building Service Employees Health*, 789 F.2d 1377 (9th Cir. 1986)).

60.    The long-standing precedent that the Ninth Circuit Court of Appeals is referring to includes seminal cases as far as ten years back.  In 2014, the Ninth Circuit specifically opined on the issue of assignment for an out-of-network provider asserting the right to seek benefits and breaches of fiduciary duty on behalf of Plan participants in *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282 (9th Cir. 2014) ("*Spinedex*").  In *Spinedex*, plaintiff, Spinedex Physical Therapy ("Spinedex"), an out-of-network provider, provided

medical services to United Plan participants, who were required to submit bills to their respective United Plans for reimbursement.  As part of Spinedex's client intake process for those services, Plan beneficiaries assigned their right to seek payment of Plan benefits to Spinedex.  United denied some of Spinedex's claims, and Spinedex, as an assignee, sued the Plans and United (the Defendant), seeking payment of benefits under ERISA § 502(a)(1)(B) and asserting breaches of fiduciary duty under ERISA §502(a)(3). *Id.* On appeal, the Ninth Circuit reversed the district court's ruling on that issue, holding that, "plaintiffs assigned their claims to Spinedex.… [I]t is black-letter law that an assignee has the same injury as its assignor for purposes of Article III." *Id.* at 1291.[16]

61.     Accordingly, a district court for the Ninth Circuit, in *Metcalf v. Blue Cross Blue Shield of Michigan*, 57 F. Supp.3d 1281 (D. Or. 2014), has also ruled that Metcalf, an out-of-network medical service provider with a valid assignment, was entitled to receive benefits and pursue claims through his assignment under both §§502(a)(1)(B) and (a)(3).

> Whether Congress has provided Metcalf with a cause of action boils down to the original question—whether the term "beneficiary" in §§ 1132(a)(1)(B) & (a)(3) encompasses assignees—albeit now as a question on the merits, to be answered using "traditional tools of

---

[16]    The 9th Circuit Court noted that *Spinedex* was unable to assert breach of fiduciary duty under assignment because Spinedex had not effectively argued that the sparce language used for Spinedex's Assignment, "assignment of rights and benefits" indicated to the assignor patients that the word "rights" meant 'right to bring claims for breach of fiduciary duty.' *Spinedex*, 770 F.3d 1282 at 1292.  The lack of notification to the assignor (thereby the ignorance of the assignor) of the "would-be given" right to assert a breach of fiduciary duty claim rather than the inability to give such right is what the 9th Circuit determined to be fatal to the claim. Contrastingly, in this case, Plaintiff's detailed one-page Assignment of Benefits outright states that it includes the right to bring "ERISA breach and fiduciary duty claims, and other legal and/or administrative claims," properly notifying assignor patient Plan members.  (Ex. 1.)

– 29 –

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B), BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(A)(3), AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

statutory interpretation." See *Lexmark*, 134 S.Ct. at 1387. The plain text of the statute defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). To Judge Stewart, this definition was "sufficiently broad to include a person such as Metcalf who has been designated by participants ... to receive benefits and pursue claims." F & R at 1295. As a matter of plain text, this Court agrees.

*Id.* at 1287 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 1387 (2014) (in-text citations omitted). The Ninth Circuit clearly allows healthcare providers with a valid assignment of rights to enforce all properly assigned ERISA protections.

62.   The Ninth Circuit is not alone in its conclusion. All federal Circuits allow providers to claim benefits and other ERISA protections under a valid assignment of Plan benefits from Plan members. Exemplifying the federal courts' general understanding on assignment for providers seeking relief based on ERISA §502 provisions, *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369 (3rd Cir. 2015) joined five other federal courts of appeals in holding that a patient's assignment of benefits to his or her health care provider is sufficient to confer standing upon the provider to sue for non-payment of those benefits under §502(a),

As a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA §502(a). An assignment of the right to payment logically entails the right to sue for nonpayment… After all, the assignment is only as good as payment if the provider can enforce it.

*Id.* at 372. In so deciding, the Third Circuit indicated that it was guided by ERISA's intent to protect the interests of participants, transferring the burden of payment to the providers who are better situated and financed to pursue unpaid claims, joining the First, Fifth, Sixth, Ninth and Eleventh Circuits in its conclusion. *Id.* at 374. The

plain text of ERISA, the general federal interpretation of ERISA, and the Ninth Circuit interpretation of ERISA all allow for out-of-network medical service providers with a valid assignment, such as Plaintiff, to pursue claims and receive benefits under both §§502(a)(1)(B) and (a)(3) remedial provisions.

### b. Plaintiff May Plead Both §§502(A)(1)(B) and §§502(A)(3) Simultaneously

63.    Careful contextualization is required when reviewing past judicial opinions on ERISA remedies, as, over the years, Courts have shifted authoritative weight and have even removed binding authority from once seminal cases to increase support of plaintiffs' rightful ability to seek recovery for all harms.  The ability for plaintiffs to plead both §§502(a)(1)(B) and (a)(3) remedial provisions has been addressed several times by the Supreme Court, with the 9th Circuit Court of Appeals providing guidance on two seemingly changing perspectives between 1996 and 2011.  In 1996, the Supreme Court ruled on *Varity Corp. v. Howe*, 516 U.S. 489 (1996) ("*Variety*").  In this ruling, the Supreme Court stated that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief *normally* would not be '*appropriate*.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (emphasis added). Notably, *Variety* did not eliminate the right for a private cause of action for breach of fiduciary duty when another remedy is available and merely limited equitable relief to that which would be normally appropriate.

64.    Post-*Variety,* from 1996-2011, several federal circuits including the 2nd, 6th, 7th, and 11th Circuits, [17] correctly allowed for pleading of both

---

[17]    Such decisions included: *Kunkel v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 90 (2d Cir. 2001) ("*Variety*…did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered

§§502(a)(1)(B) and (a)(3) remedial provisions.  However, some Circuits, including the Ninth Circuit, had misinterpreted *Variety* to exclude §§502 (a)(3) relief if §§502 (a)(1)(B) was viable.  Clarification of this widespread misconception was not granted by the Supreme Court until 2011, with its ruling on *CIGNA Corp. v. Amara et al.,* 563 U.S. 421 (2011)("*Amara*"), which concluded not only that §502(a)(1)(B) and (a)(3) claims may be pled simultaneously, but that monetary relief may also be granted though §502(a)(3) by means of equitable theories such as Plan reformation, equitable estoppel, and "surcharge."  The Supreme Court's ruling on *Amara* persuaded other remaining circuits that pleading claims under both sections simultaneously is permissible, with the age-old caveat that a plaintiff cannot use the guise of equitable relief to obtain duplicative remedies for a single injury. *Moyle v. Liberty Mut. Ret. Benefits Plan*, 823 F.3d 948, 959–62 (9th Cir. 2016) ("*Moyle*"); *Silva v. Metro. Life Ins. Co*., 762 F.3d 711, 726 (8th. Cir. 2014) ("*Silva*"); cf. *Rochow v. Life Ins. Co. of N. Am.,* 780 F.3d 364, 370 (6th Cir. 2015); *Peters v. Aetna Inc.,* 2 F.4th 199 (4th Cir. 2021).

65.     In 2016, the Ninth Circuit Court of Appeals emphasized the profound effect of the *Amara* Supreme Court ruling on ERISA cases, in *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948 (9th Cir. 2016) ("*Moyle*") (holding that claims under 29 U.S.C. §1132(a)(1)(B) and §1132(a)(3) may be simultaneously pled and

appropriate."); *Abbruscatto v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 93 (2d Cir. 2001); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2nd. Cir. 2001).  The Seventh Circuit also opinion on *Varity*'s statement regarding simultaneous pleading, "Further, nothing in *Varity Corp.* overrules federal pleading rules…a plaintiff may plead claims hypothetically or alternatively. To dismiss an ERISA plaintiff's § 1132(a)(3) claim as duplicative at the pleading stage of a case would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate [the Federal Rules of Civil Procedure]."  *Black v. Long Term Disability Insurance*, 373 F.Supp.2d 897, 902–03 (E.D. Wis. 2005) (internal citations omitted); *Geiger v. Unum Life Insurance Co.*, 213 F. Supp. 2d 813, 818 (N.D. Ohio 2002).

pursued, reversing the district court's grant of summary judgment for the Defendant under 29 U.S.C. § 1132(a)(3), and remanding for determinations of fact and equitable relief in the form of reformation and surcharge).  Acknowledging and retracting past judicial inconsistencies, the Ninth Circuit Court of Appeals also clarified, "Some of our pre-*Amara* cases held that litigants may not seek equitable remedies under §1132(a)(3) if § 1132(a)(1) (B) provides adequate relief.  However, those cases are now "clearly irreconcilable" with *Amara* and are no longer binding." *Moyle* at 948 (internal citations omitted).[18]

66.    In *Moyle*, Plan participant plaintiffs brought a punitive class action against their retirement benefit Plan, Plan administrator, and employer (Defendant) for violations of ERISA, asserting, among other causes of action, (1) payment of benefits pursuant to 29 U.S.C. §1132(a)(1)(B) and (2) equitable remedies under 29 U.S.C. §1132(a)(3) in the form of reformation and surcharge.  In reversing the district court ruling, the Ninth Circuit Court of Appeals reprimanded the district court for "applying *Varity* and giv[ing] *Amara* short shrift even though the latter is controlling authority" and elaborated, "while *Amara* did not explicitly state that **litigants may seek equitable remedies under §1132(a)(3) if §1132 provides adequate remedies**, *Amara's* holding in effect does precisely that."  *Id.* at 960. (Emphasis added.)  The Ninth Circuit Court of Appeals explained that allowing Appellants to pursue claims under both 29 U.S.C. §1132(a)(1)(B) and §1132(a)(3) simultaneously is "consistent with ERISA's intended purpose of protecting

---

18    The 9th Circuit Court of Appeals lists example cases which are irreconcilable with *Amara* and are thus no longer binding, including: *Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir.2005) ("Because Ford asserted specific claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(2), she cannot obtain relief under 29 U.S.C. § 1132(a)(3)."), overruled on other grounds, *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir.2011).

participants' and beneficiaries' interests." *Moyle* at 948 (referencing 29 U.S.C. §1001 and quoting *Variety*, 516 U.S. at 513). The Ninth Circuit Court of Appeals concluded, "**Appellants may pursue simultaneous claims under 29 U.S.C. §1132(a)(1)(B) and §1132(a)(3).**" *Id*. at 965. (Emphasis added.) Thus, the 9th Circuit, in accordance with federal circuit courts, has clearly ruled that plaintiffs can simultaneously plead both ERISA remedial provisions §§502 (a)(1)(B) and (a)(3).

67.    Therefore, based on the above, SJN is bringing an action against Defendants under ERISA §§502 (a)(1)(B) and (a)(3).

## COUNT ONE

### (Enforcement Under 29 U.S.C. § 1132 (a)(1)(B) For Failure To Pay ERISA Plan Benefits And For Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. § 1132 (G)(1))

68.    The allegations of the prior paragraphs of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

69.    This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with the Plan.

70.    SJN seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. § 1132 (a)(1)(B); and under 29 U.S.C. § 1132 (g)(1) for recovery of reasonable attorney's fees and costs. SJN has standing to pursue these claims as the assignee of member benefits. As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for the purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against Defendants as the party with actual control over the benefit and payment determinations with respect to SJN's claim.

71.    By reason of the foregoing, SJN is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and SJN seeks recovery of such benefits by way of the present action.

72.     29 U.S.C. § 1132 (g)(1) authorizes the Court to allow recovery of reasonably attorney's fees and costs incurred in this action.  SJN has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven at trial.

## COUNT TWO

### (Breach of Fiduciary Duties of Loyalty and Due Care in Violation of ERISA 29 U.S.C § 1132(a)(3)) and for Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. § 1132 (G)(1))

73.     The allegations of the prior paragraphs of this Complaint are hereby incorporated by reference in this Count Two as if fully set forth at length.

74.     Pursuant to 29 U.S.C. § 1132(a)(3), a civil action may be brought by "a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

75.     Plaintiff, as an assignees of ERISA members and beneficiaries under the Plan, is entitled to assert a claim for relief for Defendants' breach of fiduciary duty of loyalty and care under 29 U.S.C. § 1104(a)(1)(A) and (B).

76.     Defendants are ERISA fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because, at a minimum, they exercise authority or control respecting management or disposition of the Plan assets.

77.     As an ERISA fiduciary, Defendants are required to make claim payment decisions under the Plan for the exclusive purpose of providing benefits to participants and beneficiaries, including Plaintiff as their assignee, and defraying reasonable expenses in administering the Plan.  29 U.S.C. § 1104(a)(1)(A).  This duty requires Defendants to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of its beneficiaries.

– 35 –

78.     Plaintiff is informed and believes that as an ERISA fiduciary, Defendants also owe Plaintiff a duty of care, defined as an obligation to act prudently, with the care, skill, prudence, and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  29 U.S.C. § 1104(a)(1)(B).

79.     Plaintiff is informed and believes that as an ERISA fiduciary, Defendants are also prohibited from causing the Plan to engage in any transaction Defendant know or should know constitute a transfer to, or use by or for the benefit of Defendants of any of the Plan's assets and must not deal with the Plan assets in Defendants' own interest or for its own account in accordance with 29 U.S.C. § 1106(a)(1)(D) and (b)(1).

80.     Plaintiff is informed and believes that Defendants violated the ERISA duties of loyalty and care, and engaged in prohibited transactions, through myriad acts of self-dealing, described more fully above.  Among other things, Defendants diverted Plan funds belonging to Plaintiff and used them to pay themselves and their third-party repricing companies.  Defendants also unlawfully used Plan funds for their own benefit and dealt with the assets of the Plan's assets to Defendants' owned interest-bearing bank account and through use of fraudulent misrepresentations made to Plaintiff, that Plaintiff is not entitled to the full value of the claims accepted by the Plan to be paid in full.

81.     Pursuant to ERISA § 502 (a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff is entitled to equitable relief to remedy Defendant's self-dealing and other violations of its ERISA fiduciary duties, including declaratory and injunctive relief.  Plaintiff is also entitled to seek equitable relief under ERISA § 409(a), 29 U.S.C. § 1109(a), including that Defendants restore to the ERISA Plan any profits Defendants improperly earned through use of Plan assets, that the Plan be re-written to provide more clarity as to its Allowed Amount calculations, that Defendants honor the rates

that Defendants' Provider Service representatives telephonically attest to on industry-standard insurance verification calls, that Defendants immediately cease improperly deeming certain amounts listed in Defendant's EOBs as the "Provider's Responsibility" on behalf of all Plan members); and under 29 U.S.C. § 1132 (g)(1) for recovery of reasonable attorney's fees and costs.

## **PRAYER**

WHEREFORE, Plaintiff pray for judgment against Defendants as follows:

1. Declaring that Defendants have breached the terms of the Plan with regard to out-of-network benefits;

2. Awarding Plaintiff Damages against the Defendants in an amount to be proven at trial in connection with the healthcare benefits claim, properly due and payable with respect with to the services rendered to Patient under the terms of the Plan at issue in this case, including such relief provided by 29 U.S.C. § 1132 (a)(1)(B);

3. Awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein that are unauthorized and prohibited by the Plan and applicable law;

4. Declaring that, by reason of Defendants' failure to comply with applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Defendants' actions;

5. Declaring that Defendants violated fiduciary duties under 29 U.S.C. § 1104, and awarding injunctive, declaratory and other equitable relief to redress such violations, including such relief provided by 29 U.S.C. § 1132(a)(3);

6. Appointing an independent fiduciary at Defendants' expense to re-adjudicate all of the claims processed by Defendants in this case, and to

reimburse to Plaintiff all amounts required to reimburse Plaintiff pursuant to the Plan documents, including interest;

7. Ordering Defendants to pay all reasonable costs and expenses of the independent fiduciary in re-adjudicating the claims and the reasonable costs and expenses associated with correcting all improperly adjudicated claims identified in this Complaint;

8. Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial shall show;

9. Awarding restitution for payments improperly withheld by Defendants;

10. Declaring that Defendants have violated the terms of the relevant Plan that are at issue in this case and/or policies of insurance that are providing coverage for the Patient;

11. Awarding reasonable attorney's fees, as provided by common law, federal or state statute or equity, including 18 U.S.C. § 1964(c) and 29 U.S.C. § 1132(g);

12. Awarding the costs of the suit;

13. Awarding pre-judgment and post-judgment interest as provided by common law, federal, or state statute or rule, or equity; and

14. Awarding all other relief to which Plaintiff is entitled.


**Dated:** July 11, 2024                    Respectfully submitted,

                                               **WILLIAMS WOLLITZ HAKAKIAN PC**


                                               By:    /s/ Mina Hakakian

                                               Mina Hakakian,
                                               Attorneys for Plaintiff California Spine and Neurosurgery Institute dba San Jose Neurospine